Filed 5/3/22  Ricardo C. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| RICARDO C.,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF STANISLAUS COUNTY,<br><br>Respondent;<br><br>STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>Real Party in Interest. | F083803<br><br>(Super. Ct. No. JVDP-21-000190)<br><br>**OPINION** |

### THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Ann Q. Ameral, Judge.

Ricardo C., in pro. per., for Petitioner.

No appearance for Respondent.

Thomas E. Boze, County Counsel, and Maria Elena Ratliff, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]    Before Levy, Acting P. J., Detjen, J. and Meehan, J.

Petitioner Ricardo C. (father), in propria persona, seeks an extraordinary writ (Cal. Rules of Court, rules 8.450−8.452)[1] from the juvenile court's orders denying him reunification services and setting a Welfare and Institutions Code section 366.26[2] hearing for May 9, 2022, as to his now two-year-old son, R. M.-C., Jr. (minor). Father seeks a writ directing the juvenile court to vacate the section 366.26 hearing and provide him reunification services. He contends the juvenile court erred in not notifying his family that his children were taken into protective custody[3] and asserts that he wants to reunify. We deny the petition.

## PROCEDURAL AND FACTUAL SUMMARY

In September 2021, social workers from the Stanislaus County Community Services Agency (agency) responded to a referral at the home of Crystal M.-C. (mother), father's then wife and mother of the minor and six-month-old son, J. M.-C., regarding inadequate living conditions and possible molestation of mother's then eight-year-old daughter, A.M. As the social workers approached mother's trailer, she arrived in a vehicle with the minor, unrestrained in the front seat. J. M.-C. had been left in the trailer for an indeterminate amount of time with A.M. who was asleep. Mother was disheveled, argumentative, confrontational, and paranoid. She claimed there were cameras watching her every move, including cameras placed in the screws in the trailer and in the air conditioning unit from which she could hear voices. She said father had been arrested on " 'false' " rape charges and she was using methamphetamine to cope. She did not allow A.M. to attend school.

---

[1]     Rule references are to the California Rules of Court.

[2]     All statutory references are to the Welfare and Institutions Code.

[3]     Father's infant son, J. M.-C., was also taken into protective custody. For reasons unexplained in the appellate record, father did not identify J. M.-C. as a subject of his writ petition.

Father was incarcerated pending charges of inflicting corporal injury on a spouse, kidnapping, carjacking, terrorist threats, rape by force, conspiracy to commit a crime and probation violations. He had prior felony convictions for use of force with a deadly weapon and infliction of corporal injury on a spouse.

Social workers obtained a protective custody warrant and accompanied police officers to the residence. Mother was again incoherent and rambling, claiming the social worker was a relative, the officer was her incarcerated husband and Governor Newsom had been at her home the day before. After more than an hour of trying to convince mother to peaceably relinquish the children to social workers, the officers told mother they would have to handcuff and arrest her if she did not comply. She said she would yell " 'rape,' " which she did. She was arrested and the children were taken into protective custody and placed in foster care.

The agency filed a dependency petition on the children's behalf under section 300, subdivision (b), alleging the parents' substance abuse, mother's mental health and father's domestic violence placed the children at a substantial risk of harm. It further alleged under subdivision (g) father was incarcerated for charges of kidnapping, drugging, holding captive, physically assaulting, and sexually assaulting an ex-girlfriend and was therefore unable to provide the children support.[4]

The juvenile court ordered the children detained on September 23, 2021, and set the jurisdiction and disposition hearing for October 28, 2021. On September 28, the agency filed an amended petition, adding additional counts as to mother under subdivisions (b) and (g), alleging she was arrested and incarcerated for attempted

---

[4]     The petition did not include any counts of sexual abuse under section 300, subdivision (d) (sexual abuse) perpetrated against A.M., but did include an allegation under subdivision (b) that there was an open investigation.

3.

kidnapping. The victim was a three-year-old female whom mother believed was her child.

The agency recommended the juvenile court deny mother and father reunification services under section 361.5, subdivision (e) because they were incarcerated and not yet sentenced. If convicted of their charges, their sentences would be longer than the time allowed by statute to reunify. The agency recommended the court deny A.M.'s alleged father services because he was not entitled to them. (§ 361.5, subd. (a).)

The agency reported the results of its search for relatives. Among the relatives interested in placement was minor and J. M.-C.'s paternal grandmother who lived in Arizona.

Father appeared with his attorney at the jurisdiction and disposition hearing on October 28, 2021. Mother refused to be cuffed or leave her cell to attend the hearing and her attorney waived her appearance. The juvenile court continued the matter to December 9, 2021, to perfect notice under the Indian Child Welfare Act and for a contested hearing.

On December 9, 2021, it was reported that mother was found incompetent to stand trial in her criminal matter. The juvenile court appointed a guardian ad litem (GAL) for her and continued the contested hearing to January 7, 2022.

The parents were present with counsel and mother's GAL on January 7, 2022. Mother's attorney provided a written offer of proof which was accepted by the court. Father's attorney stated they would waive father's rights to a hearing. When the juvenile court asked father if he understood his right to a contested hearing, father said his attorney had not spoken to him much and he did not understand what was going on. Father's attorney stated that he visited father at the jail and they agreed that father should not make a comment at the dependency proceeding because of his charges. The court explained father's trial rights to him. He asked if his parents could participate in the hearing. The paternal grandfather lived locally and the paternal grandmother lived in

4.

Arizona. They were interested in placement. While the court was trying to explain the Interstate Compact on the Placement of Children (ICPC) process, which it intended to initiate, mother objected and became disruptive. After she announced that she "fired" the judge and refused to be quiet, the court had her removed. The court took a recess so that father could confer with his attorney.

Following the recess, father's attorney made an offer of proof which was accepted that father did not agree with the recommendations, but was willing to work with the agency and requested that his children be placed with his mother. Father told the court he had a better understanding of his position after speaking to his attorney.

The juvenile court found the petition true as amended, declared the children dependents, ordered them removed from parental custody, denied the parents reunification services as recommended and set a section 366.26 hearing. The court ordered the agency to initiate an ICPC investigation with the state of Arizona to evaluate the paternal grandmother for possible placement.

## DISCUSSION

*The Extraordinary Writ Petition*

" 'A judgment or order of the lower court is *presumed correct.* All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

The purpose of the extraordinary writ petition is to allow the appellate court to achieve a substantive and meritorious review of the juvenile court's orders and findings issued at the setting hearing in advance of the section 366.26 hearing. (§ 366.26, subd. (*l*)(4)(A).)

Rule 8.452, which sets forth the content requirements for an extraordinary writ petition, requires the petitioner to identify the error(s) he or she believes the juvenile court made and to support each alleged error with argument, citation to legal authority,

5.

and citation to the appellate record. (Rule 8.452(b).) In keeping with rule 8.452(a)(1), we will liberally construe a writ petition in favor of its adequacy where possible, recognizing that a parent representing him or herself is not trained in the law. Nevertheless, the petitioner must at least articulate a claim of error and support it by citations to the record. Failure to do so renders the petition inadequate in its content and the reviewing court need not independently review the record for possible error. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

Father did not technically comply with rule 8.452 by specifically identifying the legal error committed and developing his arguments by citing to the record and legal authority. Instead, he wrote the following in No. 6 on the preprinted JV-825 form "Petition for Extraordinary Writ" designated for identifying the grounds on which the court's order was erroneous: "My children went [straight] to CPS. My family was never notified so they could have them. I don't want to lose custody. I want reunification."

The real party in interest urges this court to dismiss the petition as facially inadequate because it does not comply with the rule. We do have that discretion. Nevertheless, we will, if possible, liberally construe a petition in favor of finding it adequate for review. (Rule 8.452(a)(1).) We do so in this case and construe the petition as asserting the juvenile court erred in failing to notify father's relatives for possible placement and in denying him reunification services under section 361.5, subdivision (e)(1).

*Relative Placement*

Dependency law favors placing a child with relatives. To that end, the parent, social services agency, and the juvenile court have a shared responsibility to identify potential relative placements. The juvenile court must ask parents to provide the social worker with the names, residences, and other identifying information of any maternal or paternal relatives of the child. (§ 361.3, subd. (a).) The social worker must conduct, within 30 days after a child has been detained outside the home, an investigation in order

6.

to identify and locate all adult relatives of the child, including grandparents. The statute further requires the social worker to notify all relatives who are located that the child has been removed from parental custody and provide information about various options to participate in the care and placement of the child and support for the child's family. (§ 309, subd. (e)(1)(A) & (B).) Upon removal from a parent at the disposition hearing, the court must determine whether the social worker exercised due diligence in conducting the investigation required to identify, locate, and notify the child's relatives.

Although the minor and his siblings could not be immediately placed with a relative upon their initial removal, according to the record, the agency complied with the statute. On September 17, 2021, a social worker delivered a letter to father at his place of incarceration advising him that an involuntary child custody proceeding had been initiated involving his children and asking him to provide the agency the names of any relatives that he wanted considered for placement. On October 12, 2021, the agency identified several relatives through a search of its database and sent letters to those relatives. Father's mother was one of those relatives. She responded and expressed interest in taking placement of all three children. She asked the agency to consider her as a possible placement. The agency arranged for her to visit the children by video twice a month for an hour. At the conclusion of the jurisdiction and disposition hearing, the juvenile court ordered the agency to begin the process of evaluating father's mother for placement. While the court did not expressly find that the agency exercised due diligence to identify, locate, and notify relatives for placement, substantial evidence in the records supports a finding that it did. We find no error.

*Denial of Reunification Services Under Section 361.5, Subdivision (e)(1)*

Unless a statutory exception applies, reunification services must be provided to the statutorily presumed father of children who have been removed from their parents' custody. (§ 361.5, subd. (a).) One such exception is described in section 361.5, subdivision (e)(1), which requires the juvenile court to order reasonable reunification

services to an incarcerated parent unless the court determines by clear and convincing evidence those services would be detrimental to the child. Detriment is determined by reference to the child's age; the degree of parent-child bonding; the length of the sentence; the nature of the crime; and the degree of detriment to the child in the absence of services. (§ 361.5, subd. (e)(1).) Reunification services are subject to the applicable time limitations imposed by section 361.5, subdivision (a). Section 361.5, subdivision (a) limits reunification services to 12 months for children who, on the date of initial removal from parental custody, were three years of age or older and six months for children under the age of three years. (§ 361.5, subd. (a)(1)(A) & (B).)

We review an order denying reunification services for substantial evidence. (*In re James C*. (2002) 104 Cal.App.4th 470, 484.)

To the extent father's statement that he would like to reunify is a challenge to the juvenile court's order denying him reunification services, he fails to show that the court erred in denying him services under section 361.5, subdivision (e)(1). Father was incarcerated on serious felony charges and a trial date had not been set. He also had a long history of previous felony convictions which could increase his sentence if he were convicted. In addition, his children were under the age of three and had not developed a significant relationship with him because of his long absences while incarcerated. Moreover, there was nothing else in the record from which the court could have reasonably inferred that father had otherwise bonded with the children prior to disposition.

Given the tender age of father's children, his lack of a meaningful bond with them, the seriousness of his criminal charges, and the possibility of a lengthy incarceration, a reasonable trier of fact could have concluded that providing father reunification services under such circumstances would have been detrimental to the interests of his children.

8.

**DISPOSITION**

The petition for extraordinary writ is denied.  This court's opinion is final forthwith as to this court pursuant to rule 8.490(b)(2)(A).